UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYBURN THORNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3038** |
| **LEROY DANOS MAINTENANCE SERVICES, INC.** | **DIVISION 3** |

## O R D E R

Before the Court is the Motion for Summary Judgment [Doc. #29] filed by defendant Leroy Danos Maintenance Services, Inc. This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. 28 U.S.C. § 636(c). On January 6, 2010, the Motion for Summary Judgment came on for oral hearing before the undersigned. Present were Dale Williams on behalf of plaintiff Rayburn Thorne and Leo Hamilton on behalf of defendant Leroy Danos Maintenance Services, Inc. ("defendant"). After oral argument, the Court took the motion under advisement. The Court has reviewed the motion, the opposition thereto, the reply memoranda, the applicable case law and the parties' oral argument. For the following reasons, the Court DENIES the Motion for Summary Judgment [Doc. #29].

**I.      Background**

Defendant is a Louisiana for-profit corporation that specializes in cutting grass, trash and debris removal and the boarding of abandoned structures. A family-owned company, defendant is

managed and operated full-time by Jacob Danos (white male), Ben Danos (white male) and, part-time, by Connie Danos (white female). At the time of the incident that gave rise to this lawsuit, Jacob Danos ("Danos") was the general manager. Defendant's employee make-up at the time of the incident was 30 percent Caucasian, 30 percent Hispanic and 40 percent African-American.

Plaintiff Rayburn Thorne worked for defendant for two months and 15 days as a Helper/Laborer at the rate of $10.00/hour, even though defendant's usual start-up pay is $8.50/hour. Aaron Straight interviewed Thorne and recommended him for hire, eventually becoming his supervisor. The crew to which defendant assigned Thorne included two white supervisory males, Straight and Mark Bailey, and four Hispanic males, Manuel Munoz, Victor Hernandez ("Hernandez"), Samuel Gomez and Jose Hernandez, all of whom were Helpers/Laborers.

On June 19, 2008, Danos received a telephone call from Thorne during which he informed Danos of an incident that had occurred the previous day. Thorne stated that someone at the crew site had hung a noose from a tree around lunch time the previous day. Thorne stated that the noose had remained in the tree for approximately 40 minutes and that Straight did not cut down the noose until after lunch. Thorne informed Danos that he did not believe that Straight or Bailey had hung the noose in the tree. Thorne believed that Munoz had placed the rope in the tree as Thorne had seen Munoz with a rope earlier in the day.

Danos told Thorne that the incident had not been reported, that any such activity was unacceptable behavior by an employee, that he would fully investigate the incident and that Thorne could transfer to another crew the following day. After hanging up with Thorne, Danos called Straight to ask what had occurred and why the incident had not been reported to him. Straight told

2

Danos that some members of the Black Panthers were at the job site questioning him and impeding the advancement of the job duties at the site. Danos asked Straight to put the leader of the group on the phone. A young woman then spoke briefly with Danos and agreed to meet with him at defendant's Kenner office to discuss their concerns.

During this conversation, the young woman informed Danos that Thorne would be leaving the job site to accompany her. Within minutes, the young woman called Danos back to inform him that she could not meet with him on that date. Danos asked her to hand the telephone to Thorne. Danos then asked Thorne to stop by the office to speak with him. When Thorne returned to the office, however, he got in his car and left.

On June 19, 2008, Danos took statements from the crew. Munoz admitted that he had found the noose behind a garage on the property that the crew had been clearing. (Aff. of Manuel Munoz [Doc. #297-] at ¶ 7). According to Munoz, he had placed the noose in the tree as a joke. (*Id.*). Munoz stated that he did not direct the joke at Thorne, and the incident was not racially motivated. (*Id.* at ¶¶ 10-11). Bailey stated that Thorne first directed his attention to the noose shortly before lunch. According to Bailey, when Thorne asked him who had hung the noose in the tree, Bailey admitted that he did not know. Bailey also noted that Thorne thought Munoz had done it because Thorne had seen Munoz with a rope earlier that day. The other employees admitted that they had seen the noose during lunch, had not commented on it and had watched Straight remove it.

Straight told Danos that he had noticed the noose when he returned from the back of the property. He admitted that he had tried to ignore the noose because a resident of the property next door was in the yard. Straight also stated that none of the other employees, including Thorne, spoke

of the noose during lunch. After lunch, Straight removed the noose and threw it away. Later that day, Thorne first approached Straight to discuss the noose. Thorne asked Straight what he thought of the noose. Straight told Thorne that "that piece of rope was gibberish and didn't mean any thing." (Aff. of Aaron Straight [Doc. #29-5] at ¶ 9). Straight also informed Thorne that he did not perceive any racial hostility in the crew and that he did not believe the noose to be directed at Thorne. Straight also informed Danos that he had approved Thorne's request to leave work early that day.

Later that evening, Thorne called Danos and informed him that he would be unable to work the following day because he "had business to take care of." (Aff. of Jacob Danos [Doc. #29-4] at ¶ 15). Danos assured Thorne that his absence would be excused and reminded him that he was to report to another crew in Kenner and not to his original crew. Thorne also informed Danos that he felt that other members of the original crew did not like him because they believed that he did not work as hard as the Hispanic workers.

On June 21, 2008, Thorne did not report to work. Neither did he call his supervisor. On June 23, 2008, Thorne also failed to report for work and to call his supervisor. Thorne called later that morning and stated that he would be unable to report for work because he "had business to take care of." (*Id.* at ¶ 17). Thorne also stated that he had tried to call Straight and the supervisor of the new crew but had been unable to reach them.[1] During this call, Danos informed Thorne that, given the amount of work that faced the new crew, he had hired a replacement to fill Thorne's spot after he had failed to report to work. Danos told Thorne that, if he wanted to report to work the following

---

[1] Defendant alleges that its telephone records do not show that Thorne attempted to contact them on June 21, 2008.

day, Danos could still assign him to another crew. Thorne then informed Danos that he was terminating his employment. Thorne also stated that his attorney had advised him that he should not return to work with defendant. Thorne then asked to obtain his final paycheck. He later picked up his final paycheck at defendant's office.

After a full investigation, Danos determined that the noose incident was not an act of intentional discrimination but rather an unfortunate and boorish attempt at humor by Munoz. Because defendant had never received a complaint of racial discrimination or harassment, Danos contacted his attorney. (*Id.* at ¶¶ 18-19). After counseling with his attorney, defendant adopted and promulgated the Leroy Danos Maintenance Services, Inc. Discrimination/Harassment Policy and adopted the Leroy Danos Maintenance Services, Inc. Hiring Packet and Handbook. (*Id.* at ¶ 19). Danos also issued two-day suspensions, without pay, to Straight, for failing to report the incident, and to Munoz, for hanging the noose in the tree. (*Id.*).

On June 23, 2008, Thorne filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Defendant alleges that it has not heard from Thorne since he filed the charge.

**II.    The Parties' Contentions**

    **A.    Defendants' Motion for Summary Judgment**

Defendant argues that it is entitled to summary judgment because Thorne can present no material facts to demonstrate that any of defendant's *white* employees hung the noose from the tree. Defendant notes that Munoz – an Hispanic and member of a protected class himself – has admitted to hanging the noose as a joke. (Aff. of Manuel Munoz [Doc. #29-7] at ¶ 7). Because Munoz has

admitted that he did not direct the joke at Thorne, defendant asserts that Thorne can present no evidence of racial hostility on Munoz's part.  Defendant points out that Thorne's complaint makes no allegations of a racially-hostile environment among the Hispanic work force but alleges racial hostility only on the part of Danos, Straight and Bailey.

Citing jurisprudence from the United States Supreme Court, defendant argues that, to establish a claim for a hostile work environment, Thorne must demonstrate repeated, racially-motivated conduct and not simply one discrete act.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Defendant notes that in his complaint, Thorne has attempted to establish more than one discrete act by alleging that defendant applied discriminatory bathroom privileges and attempted to withhold the correct payment of wages.  With regard to the bathroom privileges, defendant asserts that all other members of Thorne's crew have denied that such practices existed, and Thorne never brought this to Danos's attention. With regard to the payment of wages, defendant points out that Thorne's complaint does not explain why Thorne believes that the incident was racially motivated. Indeed, defendant points out, Thorne earned more than any other Helper/Laborer on his crew, and the evidence in the record proves that the paycheck error – on Thorne's first paycheck – was nothing more than a clerical error.  Defendant claims that the error was corrected immediately after Thorne brought it to defendant's attention.

Citing Fifth Circuit jurisprudence, defendant also argues that Thorne must provide credible evidence that the alleged incidents of racial harassment were related and that the harassment was pursuant to an organized scheme.  *See Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 537 (5th Cir. 1998).  Defendant maintains that, apart from his self-serving statements, Thorne has not

6

offered – and can not offer – evidence sufficient to establish a scheme on the part of its management to create a racially-hostile work environment.

Because Thorne can not establish that the noose incident was the act of his supervisor, defendant argues that Thorne must establish all five elements of the Title VII test to determine whether racially-motivated harassment has occurred. Defendant asserts that Thorne can not prove that defendant's management knew or should have known of the harassment in question and failed to take prompt remedial action. Defendant notes that Thorne does not allege that he ever informed management of any racially-motivated behavior apart from the noose incident.

Defendant also points out that Thorne voluntarily resigned within three days after having informed Danos of the noose incident. Defendant argues that it had no time to take prompt remedial action within the three days that Thorne remained employed with it. Acknowledging that no anti-harassment policy existed before the noose incident, defendant notes that "[w]hat constitutes prompt remedial action depends on the facts of the case." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999). Here, defendant notes that the evidence demonstrates that Danos immediately called Straight after Thorne informed him of the incident, immediately conducted an investigation, sought legal assistance to ensure that he acted properly, adopted and promulgated an anti-harassment policy and suspended the supervisor and the employee, without pay, for their involvement in the incident. Defendant argues that Thorne can not rebut these facts.

Lastly, defendant contends that Thorne can offer no evidence of constructive discharge. Citing the elements of a constructive discharge claim, defendant first argues that Thorne can show no adverse employment action because he voluntarily quit after three days. Defendant asserts that

7

Thorne's voluntary resignation within three working days of filing a complaint of racial harassment is the type of action against which courts guard. Accordingly, defendant maintains, Thorne can offer no evidence that he was constructively discharged.

**B.     Thorne's Opposition**

Thorne argues that defendant subjected him to an objectively hostile work environment. Thorne contends that Straight often made racist comments like "I'm tired of blacks pushing my buttons." (Decl. of Rayburn Thorne [Doc. #49-2] at ¶ 3). Thorne argues that Straight escalated his campaign when Thorne – the last African-American on the crew – refused to quit. Thorne also argues that Straight told Thorne to use the backyard as a restroom while Straight allegedly drove the Hispanic and Caucasian workers offsite to use proper restroom facilities.

Thorne claims that on the day of the noose incident, Straight and the other Hispanic employees ate lunch directly under the noose. Thorne alleges that after he called his brother and girlfriend, he noticed Hernandez holding the noose and looking at Thorne with a smile on his face. (*Id.* at ¶ 5). Thorne alleges that it took 45 minutes to calm down before he could approach Straight and the other employees – allegedly still eating lunch under the tree – to ask about the noose. Thorne maintains that Straight replied that it was "just a joke" while Bailey and the Hispanic employees laughed. (*Id.* at ¶ 6). Thorne contends that he heard Straight tell Bailey, "I have got to set an example," when Straight cut the noose from the tree. [Compl. at ¶ 10]. The others allegedly laughed at Straight's statement.

Thorne argues that the noose and its brandishing by Hernandez was directed toward him in an attempt to force him to quit. He asserts that he was fearful for his life or grievous bodily harm

8

as there were sharpened machetes all around the lunch circle.

Following the noose incident, Thorne alleges that the crew proceeded to the next work site, with Thorne in the front passenger seat and the four Hispanic employees – armed with knives – in the rear. Thorne alleges that during this trip, Bailey turned to the four Hispanic employees to ask, "Y'all got my back, right?" (*Id.* at ¶ 8).

Thorne contends that the following day, he confronted Straight and the four Hispanic employees with a video camera.[2] (*Id.* at ¶ 9). Straight allegedly admitted his involvement in the previous day's events, but the Hispanics allegedly continued laughing and smiling. (*Id.*). When Thorne informed Danos of the situation, Thorne contends that Danos's only solution was to assign him to an all African-American crew. Although visibly upset, Danos allegedly refused Thorne's request for time off to recover and threatened that Thorne would be replaced if he failed to report for work. Thorne alleges that no one employed by defendant ever contacted him again.

The crux of Thorne's argument is that the *Faragher/Ellerth* affirmative defense is unavailable to defendant. In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), the Supreme Court held that where the immediate or successively higher supervisor allegedly commits the harassment, the employer is itself vicariously responsible for the racially-hostile environment. However, when co-employees are to blame for the racially-hostile environment, the employer can be liable only if it "knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Comms., L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).

Thorne contends that the *Faragher/Ellerth* defense is unavailable here because he has

---

[2] There is no evidence in the record of any videotape.

9

demonstrated that his direct supervisor – Straight and/or Bailey – was responsible for creating and fostering the hostile work environment. Because Thorne allegedly suffered a tangible employment action – *i.e.*, constructive discharge – the *Faragher*/*Ellerth* defense is unavailable. Thorne argues that a reasonable person in his shoes would have felt compelled to resign given the repeated racist comments by his supervisor, the humiliating differential treatment regarding the use of bathroom facilities and the noose incident.

Thorne also contends that even if the *Faragher*/*Ellerth* defense is available, defendant cannot satisfy the two necessary elements. When the defense is available, the defendant must prove (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807.

Here, Thorne notes – and defendant admits – that it had no anti-harassment policy in effect at the time of the alleged incident. Thorne also contends that Straight took no immediate steps to correct the action but only compounded Thorne's injuries by ignoring his protest and allegedly making the racist comments. Thorne also notes that Danos's only alleged solution was to assign him to an all African-American crew and then threaten him with replacement if he failed to report to work.

Lastly, Thorne asserts that defendant can not prove that he took advantage of preventative or corrective opportunities. Because Thorne reported the incident to Danos within 24 hours of its occurrence, he contends that he took every reasonable step to inform defendant of the racially-hostile environment.

### C. Defendant's Reply

Given the approach of trial and the fast-paced time frame for the motion for summary judgment, defendant replied at oral argument. Defendant's main argument on reply addressed Thorne's contention that defendant had a practice of terminating African-Americans in order to hire Hispanics. Defendant introduced into evidence the affidavits of Jacob Danos and of Joseph (Dallas) Noel, an African-American supervisor who trained Straight, which rebut Thorne's contention.

### D. Plaintiff's Sur-Reply

In response to the two affidavits that defendant submitted at oral argument, Thorne filed a short sur-reply, in which he argues, *inter alia*, that Mr. Joseph (Dallas) Noel does not deny in his affidavit that his work crew is comprised entirely of African-Americans.

## III. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof

at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Title VII Hostile Work Environment Claim

Throne alleges that he was subjected to a hostile work environment in violation of Title VII. To establish a hostile work environment, a plaintiff must demonstrate that

> (1) []he is [a] member of a protected group; (2) []he was the victim of uninvited . . . harassment; (3) the harassment was based on [a protected characteristic]; (4) the harassment affected a term, condition, or privilege of [his] employment; and (5) [the] employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). This well-established five-part test has undergone a revision, with the Supreme Court ruling that in Title VII harassment cases, where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Once the plaintiff makes the four-part showing that they have been harassed by a supervisor, the "employer is subject to vicarious liability to a victimized employee" for the supervisor's conduct.

*Id.*

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Under the fourth prong, the harassment "must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The conduct must also qualify as both "subjectively and objectively offensive." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002). To determine whether the complained-of conduct was sufficiently severe or pervasive, the Court considers the following circumstances: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance." *Id.* However, "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). One act of harassment will suffice to create a hostile working environment if it is egregious. *Faragher*, 524 U.S. at 788; *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("[W]e have often recognized that even one act of harassment will suffice [to create a hostile work environment] if it is egregious.").

In his verified complaint, Thorne alleges three instances of racially-motivated and

13

discriminatory behavior: (1) the noose incident, (2) the differential bathroom privileges and (3) Straight's alleged comment, "I have got to set an example" when he cut the noose from the tree. In his memorandum in opposition to defendant's motion for summary judgment and his affidavit, Thorne now adds the alleged daily comments by Straight, like "I'm tired of blacks pushing my button," and Bailey's comment in the car on the way to the next work site, "Y'all got my back, right?"

The Court finds that Thorne has established that a genuine issue of material fact exists as to whether he was subjected to a hostile work environment. While the Court finds that Thorne's allegations -- supported only by his affidavit and verified complaint -- are not the most compelling, the Court must recognize that the only evidence before it are competing affidavits from both Thorne and defendant's employees. The Court must assume as true Thorne's allegations in his affidavit and verified complaint for purposes of summary judgment. *Parker v. State of La. Dep't of Educ. Special School Dist.*, 323 Fed. Appx. 321, 328 (5th Cir. Apr. 23, 2009). This Court can not make a credibility assessment as to the competing stories regarding Straight's alleged comments, Bailey's alleged comment in the car on the way to the next work site, the differential bathroom privileges or the events surrounding Thorne's discharge. *See id.*

For example, while Munoz alleges that he hung the noose in the tree and did not direct it at Thorne, (Aff. of Manuel Munoz [Doc. #29-7] at ¶¶ 7, 10-11), Thorne alleges that after he noticed the noose and after he called his brother and girlfriend, he saw Hernandez holding the noose and looking at him with a smile on his face. (Aff. of Rayburn Throne [Doc. #49-2] at ¶ 3). No evidence in the record rebuts Thorne's allegation. In addition, none of the defendant's affidavits rebuts the

comments that Thorne alleges Straight and Bailey made, apart from a general denial therein that no problems existed within the crew before the noose incident. Moreover, Thorne alleges that Danos's only alleged solution was to assign him to an all African-American crew and then threaten him with replacement if he failed to report to work. (*Id.* at ¶¶ 10-11). On the other hand, Danos alleges that he excused Thorne's absences after the noose incident and even informed Thorne that he could report to work after Danos had already hired a replacement for him. (Aff. of Jacob Danos [Doc. #29-4] at ¶¶ 15, 17). In other words, what faces the Court here is a typical "he said-she said" dispute, with competing affidavits on both sides. As noted above, this Court can not now -- at this stage of the proceeding -- weigh the credibility of the parties. It is the duty of a jury to weigh the credibility of the parties here. Accordingly, the Court denies defendant's motion for summary judgment on Thorne's claim of a hostile work environment.

### C. Constructive Discharge

Thorne also alleges that defendant constructively discharged him. To prevail on a constructive discharge claim, the plaintiff must show that his working conditions "were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir. 1997). Stated more simply, Thorne's resignation must have been reasonable under all the circumstances. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but the Fifth Circuit considers the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to

encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.[3] The plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992).

Only the sixth factor listed above might apply here. Because the Court finds that Thorne has demonstrated a genuine issue of material fact as to the severity or pervasiveness of harassment necessary to establish a hostile work environment claim, he has demonstrated a genuine issue of material fact as to the greater severity or pervasiveness necessary to establish a claim for constructive discharge. Once again, this Court recognizes that it can not weigh the credibility of the competing affidavits as to this issue. As noted above, Thorne alleges that Danos's only alleged solution to the noose incident was to assign him to an all African-American crew and then threaten him with replacement if he failed to report to work. (*Id.* at ¶¶ 10-11). On the other hand, Danos alleges that he excused Thorne's absences after the noose incident and even informed Thorne that he could report to work after Danos had already hired a replacement for him. (Aff. of Jacob Danos [Doc. #29-4] at ¶¶ 15, 17).

---

[3] *See McKethan*, 996 F.2d at 741 (listing some of the above factors); *Stephens*, 955 F.2d at 1027 (employee was demoted, his salary was cut, and employer badgered him to resign); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1214-15 (5th Cir. 1992) (employees offered choice between retirement or continued employment, both on unfavorable terms); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 377 (5th Cir. 1991) (employee was demoted, his salary was cut, and he was reassigned to work for a man seventeen years younger than himself who he had helped train); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir. 1991) (managerial employee, a college graduate, was reassigned to janitorial duties); *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 193 (5th Cir. 1988) (employee was offered choice between early retirement and continued employment, both on terms less favorable than the status quo); *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d at 205-06 (employee was badgered by employer to resign and was reprimanded in the presence of his subordinates).

The Court recognizes, however, that courts guard against plaintiffs who jump too fast to conclusions. As the Eleventh Circuit has stated, "[P]art of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in original). That Thorne voluntarily resigned three days after the noose incident may influence the veracity of his claim before a jury of his peers. However, given Thorne's allegations in his affidavit and his verified complaint and the allegations of Danos, Straight and Bailey in their affidavits, the Court finds that a genuine issue of material fact exists as to this claim as well. A jury must weigh the credibility of these parties.

**IV.     Conclusion**

For the foregoing reasons, the Court DENIES the Motion for Summary Judgment [Doc. #29].

New Orleans, Louisiana, this 12th day of January, 2010.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**